OPINION. Disney, Judge: The issues relate to the assets acquired from the trustee on April 1, 1937. The property was taken up on the books of petitioner at the cost figure of $38,163.38 (as adjusted after the original entry), which amount is equal to the face amount of the first mortgage bonds exchanged for preferred stock and interest thereon, plus tax liens and cost of execution in the foreclosure proceedings.[1] Later petitioner wrote up the assets to $115,777.47, an increase of $77,614.09. In its returns the petitioner claimed equity invested capital and depreciation for the assets on the basis of cost. Respondent computed equity invested capital by including $31,200 as the cost of assets acquired for preferred stock, this amount being the face amount of and interest due on the bonds; also the par value of the stock issued in exchange therefor, and $6,963.38 as liabilities assumed, a total of $38,163.38. Adjustments made by the respondent to amounts claimed for depreciation are attributable to increases made in the life of the assets. Equity Invested, Capital. The petitioner contends here that the assets acquired from the trustee on April 1,1937, had a fair market value of at least $115,777.47, and that the difference of $77,614.09 between the amount of $38,163.38 allowed by the respondent and such value should be included in equity invested capital as paid-in surplus or a contribution to capital under the provisions of section 718 (a) (2) of the Internal Revenue Code.[2] The respondent contends, as he determined when computing the deficiencies, that petitioner’s basis is cost, measured by the fair market value of $31,200 for the preferred stock and $6,963.38 for liabilities of the Glass Co. which were assumed by petitioner. Thus, the basic difference between the parties under the issue is the proper basis to be used for inclusion in equity invested capital. The petitioner contends that it is entitled, under the provisions of section 113 (a) (8) of the code,[3] to use the basis of the trustee, the transferor, and that its basis was the fair market value of the assets, without any adjustments for gain or loss to the transferor. The transfer in question was a step in a reorganization of the Glass Co. under a plan adopted to obtain a loan from the Keconstruction Finance Corporation for working capital, and the plan must be considered as a unit in considering the nature of the transfer. The plan involved foreclosure of the two mortgages and the exchange of first mortgage bonds for preferred stock of petitioner after the purchase of the assets by the trustee at the sheriff’s sale and transfer of the property to petitioner. It was not intended under the plan that the bondholders should hold unencumbered title to the property. The bondholders agreed to substitute for their lien on the property, amounting to $31,200, preferred stock of petitioner of a par value of the same amount. Their role in the plan was to serve, through the trustee, as a conduit for the transfer of the property to petitioner. Thus it was not contemplated that they should have at any time an interest in the assets in excess of their lien. The resolution adopted by the incorporators of petitioner on February 3, 1937, a few days after the foreclosure sale, discloses that petitioner was regarded as the owner of the property in question, subject to the lien of the mortgage securing the bonds. The resolution is evidence of an understanding of petitioner’s incorporators that the trustee was serving only as a conduit, with no greater interest in the assets than to receive preferred stock of petitioner in exchange for bonds. There is no evidence of intention on the part of the bondholders to contribute to the capital of petitioner. Three of the bondholders testified that they had no such intention. See George P. Pitkin, 31 B. T. A. 403.; Weaver v. Commissioner, 58 Fed. (2d) 757. Neither is there any evidence here that the amount was ever entered in the books of petitioner as paid-in surplus or a contribution to capital. Under the circumstances the bondholders were never intended to have any interest in the property to transfer to petitioner as paid-in surplus or a contribution to capital and accordingly they realized no gain in a transaction that would serve to give petitioner a stepped-up basis in the assets to use for equity invested capital purposes. The effect of the plan, as consummated, was that the petitioner acquired the lien of the bondholders in the assets for shares of its preferred stock, without regard to the actual value of the property. Property donated to a corporation by nonstockholders may not be included in invested capital. Frank Holton & Co., 10 B. T. A. 1317; Liberty Mirror Works, 3 T. C. 1018; McKay Products Corporation, 9 T. C. 1082; Brown Shoe Co., 10 T. C. 291. Here, as already concluded, the bondholders, who became preferred stockholders of petitioner, had no property rights in the assets, the value of which petitioner seeks to include in invested capital, and neither the Glass Co. nor its stockholders became stockholders of petitioner. Thus there was no consideration for the property and nothing was invested in the business for profit. La Belle Iron Works v. United States, 256 U. S. 377. In Dill & Collins Co., 18 B. T. A. 638, relied upon by petitioner as controlling the question here, the applicable statute was 326 (a) of the Revenue Act of 1918 and preferred stock was issued for the property. The respondent determined that the preferred stock issued for the bonds had a fair market value equal to its par value. No evidence was offered by the petitioner to prove any other value for the stock. Such value represents the cost to petitioner of the assets acquired for stock. Christman Co., 8 T. C. 679; Difco Laboratories, Inc., 10 T. C. 660. Petitioner is not entitled to a greater amount for inclusion in equity invested capital. Depreciation. Petitioner’s arguments with respect to exhaustion of the property is based upon the contentions it made under the invested capital question and concedes that our ruling on that issue controls this one. No reason appears for holding otherwise. Accordingly, we sustain the respondent on this question. See Detroit Edison Co. v. Commissioner, 318 U. S. 98. Decision will be entered for the respondent. There is an unexplained difference of $1 ■which is not in dispute. SBC. 718. EQUITY INVESTED CAPITAL. (a) Definition. — The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (bl— **•**•• (2) Property paid in. — Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange. * * * SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS. (a) Basis (Unadjusted) of. Property. — The basis of property shall be the cost of such property ; except that— • ***»*» (8) Property acquired by issuance of stock or as paid-in surplus. — If the property was acquired after December 31, 1920, by a corporation— • * * » * * • (B) as paid-in surplus or as a contribution to capital, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.